JUDGE DUVALL
delivered the opinion of the court:
John and Thomas J. Foster brought this action against Blackwell and McCann, upon the following agreement:
“This article of agreement, entered into by John Foster and Thomas J. Foster of the first part, and Neill McCann and Armstead Blackwell of the second part, witnesseth: That said McCann and Blackwell have this day contracted with said Fosters to deliver to said Fosters five hundred (500) head of good merchantable hogs, fat for market, no hog to weigh less than 220 pounds gross; the hogs to be ready for delivery at any time required by said Fosters, from 10th October, 1852, to 1st November, 1852. If delivered previous to the 1st of November, the lot shall average not less than 280 pounds gross; and if delivered as late as first of November, the lot is to average 300 pounds gross. The hogs are to be delivered at said Blackwell’s, in Clarke county, and said McCann’s, in Fayette county, or the whole of them at either one of said places, as may be preferred by said Blackwell and McCann. Said Blackwell and McCann are to notify-said Fosters, or one of them, as early as the 10th of October, 1852, at which place the hogs will be delivered, or whether they will be delivered at both places. The said Fosters agree to pay at the rate of $3 per hundred pounds gross for said hogs, the money to be paid at the time of delivery. And the said parties hind themselves to give security for their respective performance of this contract, if at any time required. In testimony of which, the said Fosters, in person, and said Blackwell and McCann, by Obadiah Tracy, their agent, have signed two instruments of writing, of this tenor and date, this 3d of October, 1851. The said Fosters are to give at least two *92 days’ notice to one of the parties of the second part, at what time the hogs will be required.
“ (Signed,) John Foster,
“Thomas J. Foster,
“ Obadiah TRACY,
“ For N. McCann and A. Blackwell.
“ Attest, A. H. Buckner.”
The plaintiffs aver that they delivered to the defendants a written notice, to the effect that they would be ready to receive the five hundred hogs on the 14th day of October, 1852; but that the defendants had failed to deliver the hogs according to the agreement and notice, and that the difference between the market value of the hogs and the price stipulated, was at least $1,400, for which they prayed judgment.
The defendants, in their answer, admit their failure to deliver the hogs, and, as an excuse for such failure, they allege that, after the execution of the recited agreement, they required of the plaintiffs security for the performance of their part of the contract, and so notified them; and that the plaintiffs, having failed and neglected to give the security within a x-easonable time after they had been so required, were notified by the defendants, on the 6th of March, 1852, that the contract was annulled; and they therefore deny that they are responsible for the non-delivery of the hogs.
Upon the issue thus made a trial was had, which resulted in a verdict and judgment for the plaintiffs for $1,400. Upon the motion of the defendants, a new trial was granted, in which a verdict and judgment were rendered for the plaintiffs for $1,776 26. A new trial was again asked, and was refused by the court, and the defendants have appealed.
So much of the evidence as is necessary to a proper understanding of the questions of law to be decided, will be noticed. It is proved that the appellants, as soon as they were informed by Tracy, their agent, .that the contract had been made, immediately determined to demand securit}*- of the appel-lees, according to the terms of the agreement, and directed Tracy to obtain it.
*93 There is some -uncertainty in the proof as to the precise time when the demand for security was first made. The testimony of two of the witnesses conduces strongly to show that it was made in October, 1851, or, at any rate, not later than November. This is not very material, however, inasmuch as the appellees concede that the demand had been made prior to the second Monday in January, 1852. The appellants’ notice to the appellees that the agreement was annulled in consequence of their failure to give security as required, was dated 6th March, 1852, and delivered a day or two afterwards; on the 8th of the same month the appellees offered the security, which was refused, not because it was insufficient, but because it was not offered in time. Fosters lived in Clarke county, about seven miles from Blackwell’s, and about eleven miles from McCann’s. Hanson, Goff, and Duncan, the persons offered by Fosters as sureties, also lived in Clarke county.
It is also shown by the record, that before the date of the agreement, John Foster had executed mortgages upon his property to Hanson, Poston, and others, for the purpose of indemnifying them against liabilities arising upon future as well as past suretyships.
Upon the trial, the court, at the instance of the appellees, instructed the jury that they must find for the plaintiffs the difference between the stipulated price and the value of the hogs at the time of delivery, “ unless the jury find that the defendants required in October, 1851, of plaintiffs, security for the performance of the contract, and the plaintiffs failed to give security until March, 1852, in which event they will find for the defendants; if the defendants demanded security, and waived the giving of it, they will find for the plaintiffs.”
The appellants asked an instruction to the effect that if the defendants, in October or November, 1851, notified the plaintiffs that they required security, which the plaintiffs neither gave nor offered until the 8th of March, 1852, the jury should find for the defendants; which instruction the court refused to give.
Whether the court erred in giving the one instruction, and in refusing the other, is the principal question presented by the record.
*94 That the appellees were bound to comply with the demand for security, within a reasonable time after the demand was made, is not controverted. And it is equally certain that the appellants were not at all restricted as to the time when they might make the demand. Upon this point they were subject only to the control of their own judgment and discretion. The covenant is that “ the parties'bind themselves to give security for their respective performance of this contract, if at any time required.” According to these clear and explicit terms, either party would have had a right to require security of the other the next week or the next day after the contract was entered into; and in that event, the obligation of the other party to use reasonable diligence in complying with such requirement, would have been the same, in all respects, as if it had been made within ten days of the day fixed for the consummation of the contract. The security must be given, if at any time required. Such is the language of the parties, and it conveys so certainly their intention and meaning, that nothing is left for construction. But if it were allowable to look into the probable motives and reasons which may be presumed to have controlled the appellants in requiring security at so early a period, and to infer from those motives and reasons a criterion or measure of the diligence to be used by the appellees in giving it, the conclusion would be the same. It is shown by the proof that there was a gradual rise in the price of hogs from the date of the agreement up to the time fixed for the delivery. To enable the appellants to have complied with their contract, it might have been necessary for them to purchase a part, or perhaps the whole, of the five hundred hogs they had agreed to deliver; the property of one of the appellees was encumbered in the manner already stated; he was a large and active trader, and what his pecuniary condition might be in October, 1852, was by no means certain. Under all these circumstances, was it unreasonable that the appellants should have been unwilling to incur hazards and risks in preparing to fill their contract, without the timely indemnity to which they were entitled under the contract? But, as already intimated, these are matters outside of the agreement, and are *95 entitled to little or no influence in ascertaining- the relative duties and responsibilities of the parties. These are to be determined upon the agreement, and upon the agreement alone. The security having been required, should have been given within a reasonable time after the requisition, no matter when made.
What, then, was a reasonable time, under the facts and circumstances of this case ?
Upon this question it seems to us that there can be but little real difflculty. It is a well settled rule of law, that wherever one party is required to do an act upon the demand of another, performance, or an ofFer to perform, must be within a reasonable time after demand; that is, “ so much time as is necessary to do conveniently what the contract requires to be done.” And this, of course, depends upon the nature of the act to be done, and the relative situation and circumstances of the parties. Where the contract is for the payment of money on demand, it has been héld that a failure to comply, immediately, with the demand, affords a ground of action. But it is hardly necessary to say that the same rule would not apply to a contract for the delivery of cumbrous property; and it results that each case of this sort must be determined upon its own attendant facts and circumstances.
The act to be performed by the appellees in the case before us, was the giving of the security required by their covenant. The other parties were to be found in an adjoining county) within about eleven miles, and the proof shows that the persons who would probably be applied to, and who in fact were offered as sureties, lived in the same county with the appellees. In view of these circumstances, how much time was necessary to enable the appellees, without sacrifice or extraordinary exertion, to perform with convenience this act, which they had bound themselves unconditionally to do, if at any time required? Did it require the period from October, or November, 1851, or even from January, 1852, to the 8th of March, 1852? Or, giving full effect to every fact relied upon by the appellees,, does the proof in this record even conduce to establish reasonable diligence on their part in complying, or in offering to *96 comply, with the demand made upon them for security ? We do not hesitate to respond in the negative.
It is not very material to decide whether the question of diligence in this case should have been determined by the court or by the jury. It may be proper to remark, however, that all questions of this sort involve matters of law and of fact, and in general it is the province of the jury to ascertain the facts, and of the court to apply the law to the facts so ascertained. And hence it has been held, that where the facts are admitted or undisputed, or are clearly established by the proof, what is a reasonable time is a question of law to be decided by the court. But where the facts upon which the reasonableness of the time depends are controverted or doubtful, they must be submitted to the jury before the court can properly determine whether the time was or was not reasonable. (Hill vs. Hobart, 16 Maine Rep., 168.)
Applying this rule to the case under consideration, it is clear that upon the facts indisputably established by the proof, the court could have had no difficulty in determining that the diligence shown by the appellees wholly failed to come up even to the most liberal and indulgent requirements of the law upon this subject. Or if the proof had left the question doubtful, an instruction laying down the legal tests and criteria of reasonable diligence, as applicable to the nature of the transaction, should have been given by the court.
From what has been said, it follows that a more particular notice of the instructions given upon either the first or second trial may be dispensed with, inasmuch as those instructions are in conflict with the principles we have stated.
Nor have we any doubt that the failure of the appellees to comply with the covenant we have been considering, must be regarded as operating as a discharge of the appellants from all liability upon the agreement. It is not, as is contended, a mere independent stipulation, but must be considered an essential condition, going to the whole of the consideration.
Wherefore, the judgment is reversed, and the cause remanded for a new trial and further proceedings in conformity with this opinion.