WINNISIMMET COMPANY *vs.* MORRILL WYMAN & others.
HELEN E. SMITH *vs.* WINNISIMMET COMPANY.

A., B., C. and D. owned adjoining parcels of land extending to the low water line, at the north end of Boston, which is a headland. A straight line divided the land of A. from that of B., and another straight line, parallel to the former, divided the land of B. from that of C. The line between C. and D. was not parallel to the other lines, but diverged so that the land of C. grew wider as it approached the water. The legislature granted leave to A. to extend a wharf upon his land straight into the harbor, to a line fixed by the harbor commissioners; and on the same day granted leave to B. and C., respectively, to extend the wharves upon their lands to said commissioners' line; and the next year made a like grant to D. C. and D., by an indenture between themselves, agreed that the line between them should continue to the commissioners' line in the same direction with their line on the shore. Immediately after the legislative grants to B. and C., they respectively built a structure and drove piles on the assumption that the true line of division between them was a continuation, in a straight line, of the division line between them on the shore; thus leaving B.'s two lines parallel to each other throughout their entire length. Upon a controversy arising between B. and C. twenty-five years afterwards, there being no evidence to show the form of the headland at that particular place, *Held*, that the projection of the line between them should continue in the same direction with that on the shore, and that B. was not entitled to have his premises expand as they approached the commissioners' line.

THE first of these actions was a writ of entry to recover a parcel of land at the north end of Boston, situated between low water line and the line of the harbor commissioners in Boston

Harbor. The second was a cross action, relating to the same premises. Both actions were commenced in March 1864. The situation of the premises is shown by the following plan:

At the trial in this court, before *Gray*, J., without a jury, the following facts appeared:

On the 19th of April 1837, the Winnisimmet Company were the owners in fee of a strip of land, extending from Commercial Street, above the original high water mark, to what was then low water mark, which strip was of equal width throughout, and on which they had a wharf, dock and landing-place; and by *St.* 1837, *c.* 211, passed on that day, they were authorized to extend the same into and over the tide waters of the harbor to the commissioners' line. On the same day, Samuel Aspinwall, whose title the tenants in the first action now have, was the owner in fee of the estate adjoining on the southeast, and was authorized in like manner by *St.* 1837, *c.* 212, to extend

his wharf. By *St.* 1837, *c.* 191, passed on the 18th of April 1837, a similar grant was made to Isaac Harris, the owner of the wharf estate adjoining that of the Winnisimmet Company on the northwest. And by *St.* 1839, *c.* 95, passed on the 5th of April 1839, a like grant was made to Nathaniel Goddard, the owner of the wharf estate adjoining that of Aspinwall on the southeast; provided, however, that Goddard should not have or claim any right to extend his wharf or to use and occupy the flats " beyond a line drawn in continuation of the boundary line dividing the lands and flats of the said Goddard from the lands and flats of Samuel Aspinwall." All these statutes were given in evidence at the hearing.

On the 15th of April 1836, Aspinwall and Goddard, who were then seised of their estates in common, made partition thereof by mutual releases, " by a line which runs from said street one hundred feet, and thence continues a little more southerly to low water mark," and stating that " the width of said land," so granted to Aspinwall in severalty, " as measured at successive distances of one hundred feet from said street, is thirty-one feet, thirty-seven feet three inches, forty-three feet six inches, and forty-nine feet nine inches, as shown on a plan taken by S. P. Fuller, April 8, 1836." And by an indenture made in 1839, after the passage of *St.* 1839, *c.* 95, Aspinwall and Goddard granted to each other the flats lying respectively southeasterly and northwesterly " of a line drawn in continuation of the division line established by said partition deeds between them." ·

It appeared that the north end of Boston, including the estates of the Winnisimmet Company and the tenants, was a headland; that the division lines between the estates of the Winnisimmet Company and Harris, and between the estates of Aspinwall and Goddard, were marked by permanent structures; and that so much of the commissioners' line as was embraced between these two division lines was larger than the corresponding line at low water mark.

The matter in dispute was the course of the boundary line between the grants made by *Sts.* 1837, *cc.* 211, 212. The tenants in the first action contended that it ran in the same direction as

the line dividing the estates already owned by the grantees at the time of the grants. The Winnisimmet Company contended that the width of the two estates at the commissioners' line must be proportioned to their width at low water mark, to effect which the division line must be deflected more to the eastward.

Alexander Wadsworth, a surveyor called by the Winnisimmet Company, testified that, supposing the land between low water mark and the commissioners' line to be divided among the proprietors of the headland in proportion to the fronts of their respective estates at low water mark, the lines between the estates of the Winnisimmet Company and Harris, and between the estates of the tenants in the first action and Goddard, and the line proposed by the Winnisimmet Company between their estate and the said tenants, would not give to the Winnisimmet Company more than their fair proportion of the flats. But he also testified that he had made no general examination of the headland to show what the direction of the division lines should be. And his testimony was rejected, as immaterial, as involving an opinion upon a question of law, and because, so far as it involved a question of fact, he had not shown himself to have sufficient knowledge to testify.

At the southerly corner of the estate of the Winnisimmet Company stood a brick house, the face of the southeasterly wall of which was upon the boundary line between the estates of the Winnisimmet Company and of Aspinwall. In 1837, soon after the legislative grants to them, the parties did the following acts upon what they believed and intended to be the division line between their estates, and which was in fact the line as now claimed by the said tenants, and corresponded with the southeasterly line of the brick house, and with the descriptions in the deeds of Aspinwall and Goddard in 1836, and the plan of S. P. Fuller therein referred to. The Winnisimmet Company cut off a portion of a wooden wharf, which extended from their estate over Aspinwall's, and, "sighting by the brick house," built a stone wharf, beginning at about one hundred and seventy feet from Commercial Street, and extending to about four hundred and forty feet from that street and beyond

ow water mark. Aspinwall put down a line of piles about ten feet apart, with continuous caps of timber, from the end of this stone wall, and in a line with the wall of the brick house, to the commissioners' line, there connecting with a like line of capped piles across the end of his front. The Winnisimmet Company built a new ferry slip, consisting of a double row of oak piles, with its easterly end at the outer end of the division line; and their agent, by Aspinwall's permission and consent, put down a cluster of piles half on each estate, at that end of the line, understanding it to be in a line with the brick wall.

Upon this evidence the judge ruled that the line as claimed by the tenants in the first action was the true line ; and reported the cases for the determination of the whole court. Evidence upon a question of disseisin was also reported, but became immaterial in the decision.

*G. O. Shattuck & G. Putnam, Jr.,* for the Winnisimmet Company. The legislative grants to the Winnisimmet Company and Aspinwall must be construed together, and so construed as to give to each a width at the harbor commissioners' line proportionate to that which they held at low water. The northwest boundary of the grant to the company was fixed by the grant to Harris. The line between Aspinwall and Goddard, though not fixed at the time of the grants now in controversy, may well be taken to be that which was subsequently fixed upon by *St.* 1839, *c.* 95, and by the indenture between the parties. It appears then that by the simultaneous grants of the legislature to the Winnisimmet Company and Aspinwall, the seaward front was longer than the previous fronts of the owners at low water mark. In construing such riparian grants, the division lines between the grantees are to be extended so as to give them the same proportionate lengths on the new fronts that they formerly held on the old, without reference to the direction of the old division lines. *Deerfield* v. *Arms,* 17 Pick. 45. *Walker* v. *Boston & Maine Railroad,* 3 Cush. 22, 25. *O'Donnell* v. *Kelsey,* 4 Sandf. R. 202. *Commonwealth* v. *Roxbury,* 9 Gray, 451, and *note.* The fact that the parties ignorantly adopted an erroneous construction, and established a division line in accordance therewith, does not estop

either of them from claiming according to the true boundary. *Liverpool Wharf* v. *Prescott*, 7 Allen, 494, and cases there cited.

*H. W. Paine & G. W. Phillips*, for the tenants in the first action, cited *Curtis* v. *Francis*, 9 Cush. 442, 466; *Dall* v. *Brown*, 5 Cush. 289, 293; *Dawes* v. *Prentice*, 16 Pick. 435, 441; *Sparhawk* v. *Bullard*, 1 Met. 100; *Stone* v. *Clark*, Ib. 380; *Valentine* v. *Piper*, 22 Pick. 95; 9 Gray, 523; *Wakefield* v. *Ross*, 5 Mason, 23.

CHAPMAN, J. The demandants in the first of these actions and the tenants in the second, though differently named, are by amendment the same parties, and the cases have been heard together.

The parties claim title to the premises under grants from the Commonwealth. The Winnisimmet Company owned a lot on the shore, which extended to low water mark. It was bounded by straight lines which are nearly or quite parallel, and on the northwesterly side it adjoined the land of Isaac Harris, and on the southeasterly side the land of Samuel Aspinwall, whose title afterwards passed to Wyman and others. By *St.* 1837, *c.* 191, the legislature granted to Harris authority to extend his wharves straight into the channel, as far as the line which had been established by the commissioners appointed under the resolve of 1835 for the survey of Boston Harbor. By *St.* 1837, *c.* 211, passed the same day, the Winnisimmet Company were authorized to extend their wharves to the commissioners' line; and by *c.* 212, passed the same day, Aspinwall was authorized to extend his wharf to the same line. By the terms of the grant to Harris, his southeasterly line, adjoining the Winnisimmet Company, was to be straight. It is also to be presumed that the southeasterly line of the Winnisimmet Company, adjoining Aspinwall, was to be extended to the commissioners' line without deflection, unless some fact appears to show a contrary intention.

One fact which is relied on to show such contrary intention is, that the north end of Boston, including the estates of both the parties to these actions, was a headland; and on a headland where the shore is convex the curvature makes it often necessary

to deflect the boundary lines as they extend outwards into the sea, in order to make a proper division between adjoining lots thus extended. But the shore of a headland seldom curves with any uniformity. In some parts there may be a straight shore, and in others there may be coves and creeks upon which several conterminous lots are bounded, and therefore no uniform rule can be laid down. *Deerfield* v. *Arms*, 17 Pick. 45. *Walker* v. *Boston & Maine Railroad*, 3 Cush. 1. It does not appear that the lot of the Winnisimmet Company was situated on a convex shore ; and from the mere fact that it was situated on a large headland, which included many lots, we cannot say that the easterly line should be produced otherwise than as a straight line to its outer boundary at the commissioners' line.

But the company rely upon another fact. Nathaniel Goddard owned the lot next southeasterly of Aspinwall, and by *St.* 1839, *c.* 95, the legislature granted to him the right " to extend his wharves to the commissioners' line," bounding him on the northerly side by a line drawn in continuation of the line between him and Aspinwall, and on the southeasterly side by a line drawn in continuation of the boundary line between him and Joseph W. Revere. The lots of Aspinwall and Goddard were both considerably wider at low water mark than at the opposite end, and of course they would continue to widen by the extension of their lines without deflection to the commissioners' line. The lot of Goddard is very much wider at the commissioners' line than at the opposite end, and by a subsequent indenture he and Aspinwall established the line between themselves. By this line the lot of Aspinwall continues to grow wider as it approaches the commissioners' line. But neither the grant to Goddard nor the subsequent establishment of the line between him and Aspinwall can affect the construction of the grant to the Winnisimmet Company. In Goddard's grant the legislature defined his boundaries, and he and Aspinwall had a right to establish the line between them arbitrarily, as they might think proper.

At this late day it would probably be impossible to ascertain the exact position of the original shore at the place in controversy. Neither party has attempted to do it in this case. For

this reason it is useful to know what the Winnisimmet Company and Aspinwall did in respect to the establishment of the extended line between them, and the occupation of their respective lots, soon after the grants were made, for they must be presumed to have known the facts and their own legal rights at that time. Such evidence is held to be admissible, and to be entitled to great weight in construing the grants. *Sparhawk* v. *Bullard*, 1 Met. 95. *Stone* v. *Clark*, Ib. 378. *Jennison* v. *Walker*, 11 Gray, 423, 427.

It appears that they established a line produced without deflection, drove piles upon it, and occupied accordingly. The Winnisimmet Company are not estopped to show that they made a mistake in assenting to this line, but they offer no evidence tending to show such mistake. We do not see, upon all these facts, any ground for interpreting the grant to the company so as to require a deflection of their line, in order that their lot may be widened at its outward end.

Judgment must be for the tenants in the first action, and for the demandant in the second action.