HELEN B. NOYES *vs.* JOANNA B. GILMAN.

Kennebec. Opinion September, 1880.

*Exceptions. Evidence. Surveyor's plan. Stenographer's minutes.*

Exceptions to the exclusion of record and documentary evidence cannot be sustained when they do not disclose sufficient data to enable the court to decide that the ruling excluding the evidence was erroneous.

It is discretionary with the presiding justice to allow or disallow the representation of a monument upon the court plan after it had been returned by the surveyor.

When for the purpose of contradicting a witness one party offers extracts from the testimony of such witness at a former trial, the other party is entitled to put in so much of the remainder as is relevant, and for that purpose may call the stenographer and have him read his original minutes.

ON EXCEPTIONS AND MOTION.

Writ of entry to recover possession of land in Waterville, dated October 13, 1877.

Plea, general issue.

(Exceptions.)

The defendant excepts to the admission of evidence offered by the plaintiff and objected to by the defendant; and to the rejection of evidence offered by the defendant and excluded by the court in the several instances hereinafter named.

1. Defendant's counsel offered in evidence certified copy of record of laying out and acceptance of the two rod road, from a record of a town meeting held May 2, 1808, which was objected to and excluded.

Description. — Beginning at a stake and stone on the westerly side of the way as now traveled, near Timothy Boutelle's office, and on the line between lots Nos. 104 and 105 ; thence west northwest on said line sixty-six rods to easterly side of the burying ground ; said road to be two rods wide and lay on the north side of the aforesaid line.

2. Defendant's counsel requested the court to allow the surveyor to locate upon his plan a stone monument claimed by defendant to be in the north line of said "two rod road," which stone had been located by said surveyor in his survey, prior to the trial, which request was refused, and to this refusal the defendant excepts.

3. Defendant's counsel also offered in evidence certified copy of record of laying out and acceptance of Temple street, at a town meeting held September 8, 1823, which was objected to and excluded.

Description.—Beginning at a stake in the north line of the front lot numbered 104, commonly called the Williams lot and in the east line of the county road which leads from Timothy Boutelle's barn to James Crommett, Jr.'s dwelling house; thence running south about eighty-six degrees east to a post in the angle of the roads, one of which leads from Daniel Cook's store to the dwelling house of James Hasty, and the other from said store to the east burial ground near said barn; said road to be three rods wide and to lie on the south side of the above described line. Timothy Boutelle and Nathaniel Gilman were notified and were present at the laying out of said road. We know not of any other person interested in the lands over which said road passes.

4. Also certified copy of record of laying out and acceptance of Temple street at a town meeting held September 20, 1819, which was objected to and excluded.

Description.—Beginning at a stake in the west line of the aforesaid town road about five rods and eight links northwardly from T. Boutelle's office; thence running south 84 degrees west 40 rods to the point of intersection of the east line of the county road, and the north line of a town road leading from the south side of T. Boutelle's office to said county road. This line to be the north line of the intended road, which is to be on the south side of said line, and to keep and be the width of three rods, and to extend from said town road to said county road.

N. B. That part of the last above described road which lies north of Nathaniel Gilman's north line, was accepted by vote of the town; that part which crosses said Gilman's land was not accepted.

5. Defendant's counsel also offered following certified copy of deed from Nathaniel Gilman to Lemuel Stilson, which was objected to and excluded.

Description.—A piece of land situated in said Waterville and bounded and described as follows, to wit: Beginning at a point

twenty-five feet westwardly of the west side of Timothy Boutelle's ice house and in the south line of the road leading from Dr. Daniel Cook's store by J. M. Haines' blacksmith shop; thence westwardly on said line of said road seven rods; thence southwardly at right angles with said road seven rods; thence eastwardly at right angles with said last described line seven rods; thence northwardly at right angles seven rods to the point begun at. Excepting therefrom a small piece of land in the northeast corner of said described tract estimated to contain about one square rod, belonging to Timothy Boutelle.

6. Defendant's counsel again offered copy of record of laying out and acceptance of said "two rod road," for the purpose of contradicting with testimony the other side as to its location, which was objected to and excluded.

7. Defendant's counsel offered in evidence deed from Lemuel Stilson to the First Congregationalist Society of Waterville, dated and acknowledged July 13, 1837, recorded July 14, 1837, for the purpose of contradicting the testimony of Stilson, which was objected to and excluded, which deed was of the following tenor:

Description. — Beginning at a point twenty-five feet westwardly of the west side of Timothy Boutelle's ice house, and on the south side of the road leading from Doctor Daniel Cook's store by J. M. Haines' blacksmith shop; thence westwardly on said line of said road seven rods; thence southwardly, at right angles with said road, seven rods; thence easterly, at right angles with said last described line, seven rods; thence northerly, at right angles, to the point begun at, seven rods; excepting therefrom a small piece of land at the northeast corner of said described tract estimated to contain about one square rod, belonging to Timothy Boutelle; being the same conveyed me by Nathaniel Gilman June 29, A. D., 1835, and the same on which is erected the meeting house owned and occupied by said society.

8. Defendant's counsel offered in evidence a plan made by the surveyor for the defendant, which on objection was excluded. Subsequently plaintiff's counsel offered a plan made by the surveyor for the plaintiff. This plan upon objection was excluded.

Both plans had been used during the trial. The presiding justice remarked that if one went to the jury, both must; whereupon both plans went to the jury by consent. Said plans may be referred to.

9. The defendant further excepts to the admission of evidence offered by the plaintiff, and objected to by the defendant, and to the rejection of evidence offered by the defendant and excluded by the court in the several instances mentioned in the official report of the evidence, and pr iys that these exceptions may be allowed.

By *E. F. Pillsbury* and *Foster & Stewart*, her attorneys.

*E. F. Webb* and *Joseph Baker*, for the plaintiff.

*Foster & Stewart*, for the defendant.

VIRGIN, J. The issue was the true dividing line between the adjoining parcels of land of the parties, the plaintiff's land being part of the river lot 105, and the defendant's a part of 104. The decision of this issue did not depend necessarily upon the original location of the line between the original lots as made by McKechnie in 1763, or even of the line as settled between Temple and Williams by the commission in 1797; for there is no evidence that the original monuments of that line are known to be standing upon the face of the earth. But much of the mass of testimony, oral and documentary, upon both sides, relates to alleged recognized lines between the parties and their predecessors in title, and to their respective occupation under claim of ownership. We do not consider it profitable or practicable to put into this opinion an analysis of the six hundred and twenty pages of evidence. It is sufficient to say that after a most careful examination of it, we cannot declare that the jury, with their superior facilities for weighing the credibility of the witnesses, have committed an error. There is no doubt that wherever may be the actual weight of evidence the verdict is founded upon the unqualified testimony of a very large number of disinterested and apparently intelligent witnesses, who, to all appearances, based their testimony upon their knowledge in the premises. We therefore overrule the motion to set aside the verdict.

The first, third and fourth exceptions complain that certified copies of the laying out and acceptance of the two rod road, in 1808, and similar records of the laying out and acceptance of Temple street in 1819 and 1823 respectively were excluded. But the copies offered are not made a part of the bill of exceptions; on the contrary the only portion of the record disclosed, (and that is not certified), contains simply what purports to be a description of the several roads. These paper descriptions alone unattended by connecting facts could not be admissible. The certificate may have been insufficient; the paper location may never have been fixed upon the face of the earth, or the roads never opened as located, or traveled as opened. *Sproul* v. *Foye*, 55 Maine, 163. In a word, sufficient facts do not appear to show the exclusion erroneous. *Woodcock* v. *Calais*, 68 Maine, 244.

The second exception is not tenable. It was discretionary with the presiding justice to allow or disallow the representation of the stone monument upon the court plan after it had been returned to court by the surveyor. Were it otherwise, it does not appear that the defendant was aggrieved by the ruling. The ruling in no wise excluded any evidence offered in relation to the monument, which the evidence located two rods north of any line claimed by either party.

The fifth exception does not disclose sufficient data to enable us to decide that the ruling, excluding the deed was erroneous. A literal construction of the exception shows that only the premises of the deed was offered. Nothing appears to connect its recitals with the line in question. The deed of strangers may become evidence in cases of this kind as in *Sparhawk* v. *Bullard*, 1 Met. 95; but the bill of exceptions does not bring this case within the rule of the one cited.

Neither can the sixth exception be sustained. It does not appear what testimony of the other side the record of the location was offered to contradict, or what the testimony accompanying the record was. *Fuller* v. *Ruby*, 10 Gray, 285.

The seventh exception, related to the exclusion of the deed from Lemuel Stilson to the First Congregational Society of Waterville. It was offered for the specific "purpose of contra-

dicting the testimony of Stilson"—not the grantor but his son, L. A. Stilson. What part of the testimony of L. A. Stilson this was offered to contradict we are not informed. Nor upon a careful perusal of the ten pages of L. A. Stilson's deposition do we find any testimony which the description of the premises offered tends to contradict. If otherwise admissible, (which is denied) the defendant was not injured by the exclusion.

The eighth exception discloses no cause of grievance on the part of the defendant. Both the plaintiff's and the defendant's plans went to the jury by consent of the parties; saving a few lines not upon these plans, they were copies of the court plan made for parties by the surveyor.

Under the *omnibus* clause in the bill of exceptions, the defendant makes but two complaints; and without meaning to sanction this very summary mode of filing exceptions, we pass upon these two instances of alleged grievances:

1. The exclusion of Silas Berry's testimony was undoubtedly correct. Having testified that he carried on the Waterville town farm six years, commencing eleven years ago, and that Amasa Starkey (since deceased,) was there then, the defendant asked Berry "whether Starkey told him what Peavey has told here." Peavey's testimony was a recital of what Starkey and Peavey did in relation to the well in 1844. The testimony elicited by the question was clearly hearsay.

2. The other complaint relates to the admission of the witness Noyes' testimony given at another trial. The only purpose for which it was admissible, was to contradict Noyes' present testimony. Instead of producing a copy of Noyes' entire testimony elicited on being recalled and reading extracts, the defendant produced only a copy of the extracts. Thereupon the plaintiff was entitled to put in evidence so much of the remainder as was relevant. But he had no copy. Necessity compelled him to call the stenographer and have him read his original minutes, some of which was relevant but most of which was not. So much as was not, it was the duty of the presiding justice to instruct the jury to disregard; and the presumption is that he did so instruct them. If the defendant had done his duty, this case

would not have been lumbered with irrelevant testimony. We do not think the defendant was injured, as the irrelevant testimony had no reference to the acts of this defendant or to anything which could affect her rights.

<em>Motion and exceptions overruled.</em>

APPLETON, C. J., WALTON, LIBBEY and SYMONDS, JJ., concurred. PETERS, J., concurred in the result.