ATTORNEY GENERAL *vs.* BERNICE BALDWIN & another, trustees.[1]

Suffolk. December 6, 1971. — February 17, 1972.

Present: TAURO, C. J., CUTTER, QUIRICO, BRAUCHER, & HENNESSEY, JJ.

*Waterways. Nuisance. Equity Jurisdiction,* Nuisance. *Superior Court,* Jurisdiction. *Equity Pleading and Practice,* Bill. *Words,* "Abate."

The Superior Court has authority under its grant of equity jurisdiction by G. L. c. 214, § 1, to entertain a proceeding instituted by the Attorney General seeking to have nonconforming operations of licensees of the Department of Public Works declared a public nuisance under G. L. c. 91, § 23, and to enjoin or abate such nuisance. [203]

A bill in equity annexing a license under G. L. c. 91 issued by, and a letter from, the Department of Public Works, read as a whole, alleged precisely failure by the licensees to conform with the terms of the license with respect to the material used and the manner and order of the work performed, and failure by them to pay certain charges, and was sufficient to state a valid cause of suit under G. L. c. 91, § 23. [203–205]

Where a license issued by the Department of Public Works under G. L. c. 91 stated that a certain culvert must be built prior to the commencement of filling permitted by the license and also provided that "[n]othing in this license shall prevent construction of said culvert by others," the fact that an appropriation had been made by the Legislature for construction of the culvert by the Commonwealth, but not legally obligating such construction and actually not used for that purpose, did not prevent filling operations by the licensees prior to the construction of the culvert from being considered "done in a manner not sanctioned by the department" within c. 91, § 23. [205–206]

[1] The other defendant is Prescott Cotell. The two defendants are the trustees of the Siobhan Margaret Troy Trust known, at the time of the commencement of this suit, as the Rockland Realty and Investment Trust. The license herein was issued to the Rockland Realty and Investment Trust.

Requiring the licensees under a license issued by the Department of Public Works under G. L. c. 91 to remove fill placed in a manner not conforming to the requirements of the license was warranted where it was properly found that from the outset the licensees did not intend to comply with such requirements and that they had received various written notices from the Department of Public Works indicating the deficiency of the work and the corrective measures to be taken. [206–207]

Ordering removal of fill placed in a manner not conforming with the requirements of a license issued by the Department of Public Works under G. L. c. 91 was a proper remedy under § 23 making such fill a public nuisance and authorizing suit to "abate" it. [207–208]

BILL IN EQUITY filed in the Superior Court on September 15, 1969.

A demurrer was heard by *Hale, J.* The suit was heard on the merits by *Lappin, J.*

*Albert L. Hutton* for the defendants.

*Paul A. Good,* Assistant Attorney General, for the plaintiff.

HENNESSEY, J. This is a bill in equity brought pursuant to G. L. c. 91, § 23, in which the plaintiff sought to enjoin the defendants from performing certain work in an area of Boston known as Tenean Creek. The bill alleged that the work was being done in violation of the terms of a license issued to the defendants by the Department of Public Works (Department). The matter is before us on the defendants' appeals from an interlocutory decree overruling their demurrer and from a final decree enjoining them from continuing filling operations within the area and, further, ordering them to remove all fill previously placed there. On these appeals the defendants argue that (1) the Superior Court lacked jurisdiction to hear the matter; (2) the demurrer should have been sustained because the bill failed to state concisely and with substantial certainty a claim for relief; and (3) the judge's findings do not support his final decree. There is before us a transcript of the evidence and a report of material facts.

On September 13, 1967, the Department granted the trust a license "to maintain existing seawall and solid fill,

to place fill, to build and maintain steel and stone bulk-
heads, a concrete diversion wall, a solid fill pier and rein-
forced concrete culvert, to place and maintain timber
piles and fixed floats and to dredge in Tenean Creek, so-
called, off the Neponset River, in the city of Boston."
The license provided, in part, that "[s]olid fill may be
placed within an enclosure consisting in part of said cul-
vert, in part of a dike of coarse material with a facing of
stone riprap . . . and in part of a steel sheet piling bulk-
head . . . *which shall be built prior to commencement of
the filling*" (emphasis supplied). The license also stated
that "[a]ll of the work authorized hereby shall be per-
formed in the locations shown on said plans and *in
accordance with the details there indicated*" (emphasis
supplied), and that "[t]he dike authorized hereby shall
be constructed of coarse materials such as rock and gravel
free of wood or organic materials and shall be faced with
riprap to the satisfaction of the Department." Immedi-
ately after the issuance of the license the defendants
began filling operations at the site, which consisted of
twenty-three acres of land. At the time of the trial in
April, 1970, approximately one-half of the area had been
filled by the defendants. However, beginning in October,
1968, the Department informed the defendants on sev-
eral occasions that the work being done at the site did not
conform to the requirements of the license. On Septem-
ber 9, 1969, the defendants were ordered "to stop forth-
with, all filling and related work" because of, among
other reasons,[2] the defendants' "[f]ailure to construct
culvert, bulkhead and dike prior to placement of fill in
accordance with the provisions of the license."

After a trial during which a view of the locus was
taken, the judge made detailed and lengthy findings of

---

[2] The Department also stated as reasons for its order (1) that the
material being placed as fill did not conform to the terms of the license
in that it contained timber and building demolition residue, (2) that
the defendants had failed to pay tidewater displacement charges for
fill already in place, and (3) that the defendants had taken no action,
as had been earlier advised, to deflect effluent away from Tenean
Beach.

fact. The judge found that "the dike authorized under the license was to be constructed of coarse materials such as rock and gravel, free of wood or organic materials, and was to be faced with riprap to the satisfaction of the Department." On the view the judge did not observe any steel bulkhead or extension of the culvert or any diking faced with riprap. He did observe "large timbers and other debris on the surface of the fill and in some instances imbedded in the fill at various depths." The judge also found that on June 22, 1967, the Commonwealth appropriated the sum of $178,000 "for the purpose of plans, repairs, and extensions of the Tenean Creek culvert," that the appropriation was extended until June, 1969, and that no money was ever spent from this appropriation. The judge further found that although this appropriation "was originally intended to be used for the construction of the concrete extension of the existing culvert" neither the appropriation nor the reference in the license or permission in the license that this culvert could be constructed by others, "established any legal obligation on the part of the Commonwealth to do same." The judge did rule that the construction of the culvert was a requirement of the license. The judge further found that the fill permitted should have been placed within an enclosure consisting of a steel bulkhead, culvert extension and dike, that the defendants "from the very outset, did not intend to construct a dike with riprap, the steel bulkhead, or cause to be constructed the concrete culvert," but rather intended "to fill the center of the area . . . and thereafter the dike, bulkhead, and culvert, if they were to be built, would have enclosed the area that had already been filled." This filling procedure, the judge found, was not in accordance with the requirements of the license and, therefore, constituted "a public nuisance within the meaning of" G. L. c. 91, § 23. Finally, we observe that subsequent to the court's decision, the Legislature, pursuant to G. L. c. 91, § 15, revoked the license granted to the defendants. See St. 1970, c. 846.

1. The defendants first contend that the subject matter of the present controversy was not a matter properly within the jurisdiction of the Superior Court. While it is true that lack of jurisdiction in the court below can be raised in this court for the first time (*Warner* v. *Mayor of Taunton,* 253 Mass. 116, 118; *Golden* v. *Crawshaw,* 302 Mass. 343, 344), we think that the present case was properly brought in the Superior Court. By instituting the proceedings, the plaintiff sought to have the defendants' operations at Tenean Creek declared a public nuisance under G. L. c. 91, § 23. In the words of the statute, the relief sought, namely, "to enjoin or abate such nuisance" is equitable in nature. As such, the Superior Court had jurisdiction under G. L. c. 214, § 1, as appearing in St. 1935, c. 407, § 2, which provides, in part, that "[t]he supreme judicial and superior courts shall have original and concurrent jurisdiction in equity of all cases and matters of equity cognizable under the general principles of equity jurisprudence." The defendants argue that the Superior Court lacked jurisdiction because G. L. c. 91, § 57, grants exclusive jurisdiction to this court in matters involving violations of c. 91. We disagree. The injunctive relief sought here, being a matter within "the general principles of equity jurisprudence," is governed by the jurisdictional provisions of G. L. c. 214, § 1. Such relief is, in our opinion, alternative to that contained in G. L. c. 91, § 57. Even assuming, however, that § 57 provides the only available remedy, the same result would follow since G. L. c. 213, § 1A, as appearing in St. 1962, c. 722, § 3, grants concurrent jurisdiction to the Superior Court "of all proceedings, cases and matters of which the supreme judicial court has jurisdiction."

2. The defendants also argue that it was error to overrule their demurrer. They contend that the bill fails to state concisely and with substantial certainty a claim for relief and, further, that the bill fails to allege that the defendants are operating without a license or otherwise

proceeding in violation of G. L. c. 91, § 23.   There was no error.

General Laws c. 91, § 23, provides, in part, that "all work done within tide water . . . not authorized by the general court or by the department, *or made or done in a manner not sanctioned by the department,* if a license is required as hereinbefore provided, shall be considered a public nuisance.   The attorney general . . . shall, at the request of the department, institute proceedings to enjoin or abate such nuisance" (emphasis supplied).   We observe at the outset that the license issued to the trust and the letter from the Department detailing the particulars in which the defendants' work did not conform to the terms of the license are annexed to the bill and incorporated by reference therein.   As such, they must be read together.   So viewed, the bill alleged that the Department issued a license under c. 91 to the trust and that the license required, among other things, that an enclosure consisting of a culvert extension, a steel bulkhead and a dike faced with riprap be built prior to the commencement of any filling operations and that the fill to be used at the site was to consist of earth and rock free of wood or organic materials.   The bill further alleged that the work performed by the defendants did not conform to the terms and conditions of the license in that the defendants failed "to construct culvert, bulkhead and dike prior to placement of fill," that the "material being placed as filling . . . contains timber and building demolition residue," and that the defendants failed "to pay tidewater displacement charges."

We conclude that the bill sets forth with sufficient certainty a valid cause of suit under G. L. c. 91, § 23. Contrary to defence arguments, an examination of the present bill, including the license and letter annexed to it, reveals that the requirements of the license and the manner in which the defendants work was nonconforming are set out in precise and detailed fashion.   "It is an elementary rule of equity pleading that the bill must contain a clear and exact statement of all the material

facts upon which the plaintiff's right to relief sought depends in order that the defendant may answer fully and fairly and know what he will be called upon to meet." *Brown* v. *Neelon*, 335 Mass. 357, 361, and cases cited. The present bill meets these requirements. In reaching this conclusion, we observe that the bill alleges that the work has been "done in a manner not sanctioned by the department." G. L. c. 91, § 23. While we agree with the defendants that the power to revoke licenses such as the one involved here resides with the Legislature, G. L. c. 91, § 15, we also believe that the Legislature intended that any work done pursuant to such a license conform to the requirements of the Department which, under the provisions of c. 91, exercises broad supervisory powers over licensees. See, for example, G. L. c. 91, §§ 10, 12, 12A, 14, 17, 18, 20, 23, 47, 48, 53. In cases such as the one now before us, where there is an allegation that the work performed constitutes a public nuisance, we observe that the Department's broad supervisory power includes the power to request the Attorney General or the district attorney to institute proceedings to enjoin or abate such nuisance. G. L. c. 91, § 23. That being the case, the present bill sets out a valid cause of suit.

The defendants also argue that the appropriation of $178,000 which was extended until June, 1969, "for the purpose of plans, repairs, and extensions" of the Tenean Creek culvert, demonstrates that the Legislature intended that the culvert was to be built by the Commonwealth. That being so, they argue, it cannot be said that their filling of the locus prior to the construction of the culvert was "done in a manner not sanctioned by the [d]epartment." We disagree. The license provided that the defendants were, among other things, "to maintain existing seawall and solid fill, to place fill, to build and maintain steel and stone bulkheads, a concrete diversion wall, a solid fill pier and *reinforced concrete culvert*" (emphasis supplied). It also stated that "[n]othing in this license shall prevent construction of said culvert by others." The judge correctly found that the appropria-

tion in question was originally intended to be used for the construction of the culvert. However, he also found, and we agree, that this appropriation of public funds did not establish "any legal obligation on the part of the Commonwealth to do same." In view of the provisions contained in the license, it is clear that the responsibility for complying with its terms rested with the defendants. That responsibility consisted in part of postponing the commencement of filling operations until the enclosure consisting of the culvert, bulkhead and dike was constructed. Therefore, the defendants, by placing fill at the site in the absence of the required enclosure, were proceeding in a manner "not sanctioned by the department." G. L. c. 91, § 23.

3. The defendants finally argue that the judge's findings do not support his final decree. Specifically, they claim that requiring them to remove the fill already placed at the site places an onerous burden on them and one that is not warranted by the evidence. In support of their argument they state that the Department failed to supervise and object to the filling operations while they were being conducted at the site. Also, they argue that no evidence was introduced to show that their failure to build the enclosure before placing the fill caused any substantial damage or in any way derogated from the substance of the requirements imposed on them by the license. Their argument fails.

The judge found that "filling of the locus began after the issuance of the license in the latter part of 1967, and that the nature of the filling and the area of the locus which was filled, established that the licensee, from the very outset, did not intend to construct a dike with riprap, the steel bulkhead, or cause to be constructed the concrete culvert, but rather that the licensee was going to fill the center of the area to be filled first, and thereafter the dike, bulkhead, and culvert, if they were to be built, would have enclosed the area that had already been filled" and that this was "in violation of the terms of the license." Although the defendants admit that this finding is sup-

ported by the evidence, we observe that our own review of the evidence leads us to a similar conclusion.

With respect to the Department's duty to supervise the filling operations, the judge correctly found that "various written notices were given to the . . . [defendants] relative to the deficiency in their work, beginning in October of 1968 and continuing through to September 9, 1969, on which date an order [was issued] to stop forthwith all filling and related work authorized under the license. Each of these communications spelled out the areas in which the Commonwealth felt the work was not being done in accordance with the license, and requested compliance." In view of these notices, it cannot now be argued that the defendants were not aware of the Department's attitude toward the nonconforming filling operations. We observe that the notices not only informed the defendants that their work was not being done in accordance with the terms of the license but also stated in precise detail the manner in which the work was nonconforming and, in most instances, prescribed the method to be used in correcting the nonconformity.

4. As the plaintiff correctly points out, the application of that part of the final decree which enjoined the defendants from placing any further fill in the area until the terms of the license were complied with has become moot since the Legislature subsequently revoked the defendants' license to fill the area. *Mullholland* v. *State Racing Commn.* 295 Mass. 286. However, the defendants object to the remainder of the decree wherein the judge ordered that the fill previously placed at the site be removed. There was no error.

General Laws c. 91, § 23, specifically states that where work done pursuant to a license constitutes a public nuisance, proceedings shall be instituted "to enjoin or abate such nuisance." In construing the statute, we have in mind the familiar rule that "every word of a legislative enactment is to be given force and effect." *Commissioner of Pub. Works* v. *Cities Serv. Oil Co.* 308 Mass. 349, 360. Here, the Legislature's use of the word "abate"

as well as the word "enjoin" was not without purpose. Given its commonly accepted meaning when used in connection with nuisances, the word "abate" means removal. Black's Law Dictionary (4th ed.). From its use of the word, the Legislature clearly intended that we give it that meaning in cases such as the one now before us where public land has been made available for private purposes and its subsequent development results in a public nuisance. As this court stated in construing the predecessor to the present statute, "The purpose of the statute is, not only to punish all encroachments upon this portion of the public domain, but to furnish means for their prevention or removal. It cannot be doubted that the legislature has power to do this, and to prohibit all invasions of the rights of the public without regard to the amount of damage occasioned by them." *Attorney Gen.* v. *Woods,* 108 Mass. 436, 441. The final decree was therefore proper in all respects.

5. It is clear that a relatively large expenditure of money will probably be required to accomplish the removal of the fill. The record before us indicates that at least twelve acres of land have been filled to considerable depth. We recognize that the two licensees named herein as defendants may not be financially able, either from trust assets or their personal assets, to comply with the court order to remove the fill. In this case no issue was raised before us as to the persons other than the licensees who may possibly be held responsible for the removal of this public nuisance.[3] Nevertheless, there may be occasion for further resort to the Superior Court to compel the complete removal of the fill by the responsible persons. Accordingly, the Superior Court, in its decree after

---

[3] It has been held that all persons who join or participate in the creation or maintenance of a public nuisance are liable jointly and severally for the wrong and injury done thereby. *Fuller* v. *Andrew,* 230 Mass. 139, 146. 50 Am. Jur. 2d, Nuisances, § 56, and cases collected therein. It is not necessary to show that the person charged committed the particular act that created the nuisance; it is sufficient if he contributed thereto. *McDonald* v. *Dundon,* 242 Mass. 229, 232. *Commonwealth* v. *Emmons,* 98 Mass. 6.

rescript, will retain jurisdiction, with leave to the parties to apply for additional relief as occasion may arise. The decree shall further provide (1) that additional defendants may be added by appropriate proceedings, provided that a motion to add such additional defendant or defendants is allowed by a judge of the Superior Court within 120 days after the entry of this rescript in the Superior Court, and (2) that further appropriate proceedings shall be held to determine the legal responsibility, if any, of such additional defendant or defendants. The interlocutory decree overruling the demurrer is affirmed. As modified, the final decree is affirmed.

*So ordered.*