FRANK BAUMAN, MICHAEL BROUGH, PAM JONES, GENE FRAZELLE, and GREG
TILLMAN, Plaintiffs v. WOODLAKE PARTNERS, LLC, WOODLAKE PARTNERS,
LIMITED PARTNERSHIP, Defendants, FRANK A. DUBE, KARL B. KILLINGSTAD,
JUDITH R. KILLINGSTAD, WITHERS G. HORNER, ELIZABETH A. HORNER, and
ELIZABETH LANTZ, Defendant-Intervenors

No. COA08-897

(Filed 1 September 2009)

**1. Trials— nonjury trial—failure to make specific findings of
fact—failure to make separately stated conclusions of law**

The trial court did not err in a nonjury trial by failing to make
specific findings of fact and separately state its conclusions of
law. The Court of Appeals was able to adequately evaluate the
propriety of the trial court's order and plaintiffs were not entitled
to a judgment in their favor under any view of the evidence.

**2. Waters and Adjoining Lands— navigable waterway—public
trust doctrine**

The trial court did not err by failing to determine that Crane's
Creek constituted a navigable waterway so that a lake formed by
damming the creek was subject to the public trust doctrine and
available for use by the public without charge. A stream cannot
be said to be navigable in fact for purposes of subjecting a lake
created by damming that stream to the public trust doctrine in
the absence of evidence tending to show that the pertinent
stream is passable by watercraft over an extended distance both
upstream of, under the surface of, and downstream from the lake.

Appeal by Plaintiffs from judgment entered 16 January 2008 by
Judge Lindsay R. Davis, Jr. in Moore County Superior Court. Heard in
the Court of Appeals 9 March 2009.

*Van Camp, Meachum & Newman, PLLC, by Michael J.
Newman, for Plaintiffs.*

*Gill & Tobias, LLP, by Douglas R. Gill, for Defendants.*

*West & Smith, LLP by Stanley West, for Defendant-Intervenors.*

ERVIN, Judge.

Plaintiffs, owners of real property situated in Woodlake Country
Club (Woodlake), appeal a judgment entered by the trial court in

favor of Defendants, Woodlake Partners, LLC, and Woodlake Partners, Limited Partnership, the owner and developer of Woodlake. Plaintiffs sought, among other things, a declaration that Defendants' imposition of a lake access fee charged to those Woodlake property owners desiring boating privileges was contrary to law and could not be enforced. For the reasons stated below, we affirm the trial court's judgment.

## Factual Background

Woodlake is a gated residential community located near Vass in Moore County. Among its varied amenities is a lake with a surface area of approximately 1,200 acres formed by the damming of two creeks, one of which is known as Crane's Creek.

Ingolf Boex (Boex) is the Defendants' sole shareholder and president. In 2000, after obtaining sole ownership of Defendants, Boex adopted the Woodlake Constitution and By-Laws, which supplemented Woodlake's Rules and Regulations. According to the Rules and Regulations, two categories of membership were available at Woodlake: a Premiere Membership and a Social Membership.[1] Regardless of whether one was a Premiere or Social resident, all members enjoyed unfettered access to the lake without the necessity for paying a fee.

At a Board of Advisors meeting held in November, 2004, Boex announced plans to implement new membership categories and rights that were to become effective 1 January 2005. Among the changes Boex intended to implement was the imposition of an annual lake access fee of $1,250 that had to be paid in order for a property owner to operate a boat on the lake.

On 12 May 2005, Plaintiffs filed a declaratory judgment action against Defendant in which Plaintiffs requested that the court examine the relevant provisions of the Woodlake Constitution, By-laws, Rules and Regulations and the applicable law in order to determine the rights of the parties. Among the declarations sought by Plaintiffs was a pronouncement that "the purported implementation by Defendant[] of a lake access fee violates the parties' agreements and violates the Plaintiff's right of access to navigable waters as set forth

---

1. The essential difference between the two categories of membership at Woodlake is that a Premiere membership provided membership in the Woodlake Golf Association while the Social membership did not. A third category of membership, transitional membership, is not relevant to the present dispute.

in applicable state and federal law."[2] Plaintiffs subsequently filed an amended complaint on 27 May 2005.

On 22 July 2005, Defendants filed a motion for judgment on the pleadings and an answer in which they denied the material allegations of Plaintiffs' complaint and requested that the complaint be dismissed with prejudice. On 5 September 2005, Frank A. Dube, Karl P. Killingstad, Judith R. Killingstad, Withers G. Horner, Elizabeth Horner, and Elizabeth Lantz filed a motion to intervene and a complaint in intervention in which they sought leave to participate in this proceeding in alignment with Defendants. On 19 November 2005, Judge Donald L. Smith entered a Consent Order allowing Intervenors' intervention and authorizing Intervenors to file an answer to Plaintiffs' amended complaint. On 22 December 2005, Intervenors filed an answer and counterclaim in which they denied the material allegations of Plaintiffs' amended complaint and requested the court to uphold Defendant's actions. On 17 February 2006, Plaintiffs filed a reply to Intervenors' counterclaim.

This case came on for trial before Judge Lindsay R. Davis, Jr., at the 14 January 2008 civil session of Moore County Superior Court. At that session of court, the parties eventually stipulated to an agreed-upon resolution of all issues related to the proper interpretation of the Constitution and By-Laws and Rules and Regulations. In light of the parties' agreement, the trial court determined that "the only issue to be tried [was] whether the waters of the lake [were] "navigable waters." The lone disputed issue was heard by the trial court, sitting without a jury.

At trial, Plaintiff, Frank Bauman (Bauman), presented evidence on behalf of himself and the other Plaintiffs.[3] Bauman testified that he and plaintiffs, Mike McGee (McGee) and Don Jones (Jones), took a half-mile canoe trip on Crane's Creek upstream from the lake during the summer of 2006. The trip taken by Bauman, Jones, and McGee was videotaped, and the videotape was introduced into evidence. At the time of their voyage up Crane's Creek, Bauman and

---

2. Due to the nature of the relief sought and the number of affected parties, Plaintiffs requested that this case be certified as a class action pursuant to N.C. Gen. Stat. § 1A-1, Rule 23. By means of an order dated 4 August 2005, Judge James M. Webb certified this case as a class action, allowing all Woodlake members to intervene as plaintiffs in the action.

3. Defendant and Intervernors were provided with an opportunity to introduce evidence, but elected not to do so.

Jones utilized a canoe that was approximately seventeen feet in length while McGee paddled a twelve-foot kayak.

The boats were launched near a bridge on McLaughlin Road, which runs north and south and separates Woodlake on the east from other privately owned land on the west. At the point where the canoe was launched, the creek was approximately 100 feet in width. At the conclusion of the half-mile trip, the width of the stream from bank to bank remained the same. In addition, the three men encountered a tributary of Crane's Creek during their travels that appeared to be navigable itself.

As they traveled upstream in a westerly direction, the three men dipped their oars, which were approximately six to eight feet in length, into the water at various points in order to measure its depth. When the three men tested the water's depth in this manner, their oars were completely submerged.

Aside from describing his trip up Crane's Creek, Bauman testified that Crane's Creek appeared to be navigable by small boat at the point where it intersected Crane's Creek Road and Cypress Creek Road, which are located about two to three miles upstream from the lake. Although Bauman had not personally paddled along Crane's Creek below the dam that created the lake, he testified that he was aware that others had done so.

After Plaintiffs rested, Defendants and Intervenors elected to refrain from presenting evidence and moved to dismiss. After hearing the arguments of counsel, the trial court took the matter under advisement. On 16 January 2008, the trial court entered an Order and Judgment in which it determined "that the [D]efendants[']  and [D]efendant-[I]ntervenors['] motions to dismiss at the close of the evidence are granted, and [P]laintiffs' claim based on the [D]efendants' imposition of a fee for use of the lake is dismissed, with prejudice." In the concluding paragraph of its order, which attempted to explain the basis for its decision, the trial court stated that:

> The "test" for navigability . . . requires a showing that the body of water is navigable by watercraft in its natural condition. "Natural condition" clearly means without modification at the hands of man. *See Fitch v. Selwyn Village*, 234 N.C. 632, 635, 68 S.E.2d 255, 257 (1951), which involved a claim based on attractive nuisance, and in which the Court distinguished between artificial impoundments and streams which flow in their "natural state." The plain-

tiffs offered evidence that the lake is man-made, by the damming of two creeks. They offered evidence that one of the creeks, Cranes Creek, is navigable in its natural condition upstream of the lake, but no evidence whether it is navigable in its natural condition at the site of the lake or downstream. . .

Plaintiffs noted an appeal to this Court from the trial court's judgment.

## Procedural Issues and Standard of Review

[1] Trials conducted by the court sitting without a jury are governed by N.C. Gen. Stat. § 1A-1, Rule 41. N.C. Gen. Stat. § 1A-1, Rule 41(b) provides, in pertinent part, that:

After the plaintiff, in an action . . . without a jury, has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence. If the court renders judgment on the merits against the plaintiff, the court shall make findings as provided in Rule 52(a).

Ordinarily, the standard of review on appeal from a judgment entered by a trial judge sitting without a jury is whether there was competent evidence to support the trial court's findings of fact and whether the trial court's conclusions of law were proper in light of such facts. *Chemical Realty Corp. v. Home Fed'l Savings & Loan*, 84 N.C. App. 27, 37, 351 S.E.2d 786, 792 (1987). The trial court's factual findings in such a proceeding are treated in the same manner as a jury verdict and are conclusive on appeal if they are supported by the record evidence. *Hunt v. Hunt*, 85 N.C. App. 484, 488, 355 S.E.2d 519, 521 (1987). A trial court's conclusions of law, however, are reviewable *de novo*. *Wright v. T&B Auto Sales, Inc.*, 72 N.C. App. 449, 325 S.E.2d 493, 495 (1985).

According to Plaintiffs, the trial court erred by failing to make specific findings of fact and to separately state its conclusions of law. Generally speaking, Plaintiffs have accurately described what a trial court is supposed to do at the conclusion of a non-jury trial. "In all actions tried upon the facts without a jury . . . the court *shall* find the facts specially and state separately its conclusions of law thereon and

direct the entry of the appropriate judgment." N.C. Gen. Stat. § 1A-1, Rule 52(1)(1); *Pineda-Lopez v. N.C. Growers Ass'n*, 151 N.C. App. 587, 589, 566 S.E.2d 162, 164 (2002) (emphasis in original). Furthermore, "[t]he requirement that findings of fact be made is mandatory, and the failure to do so is reversible error." *Graphics, Inc. v. Hamby*, 48 N.C. App. 82, 89, 268 S.E.2d 567, 571 (1980) (citing *Carteret County General Hospital Corp. v. Manning*, 18 N.C. App. 298, 300, 196 S.E.2d 538, 539 (1973)); *see also Hill v. Lassiter*, 135 N.C. App. 515, 517, 520 S.E.2d 797, 800 (1999).

Admittedly, the trial court's order is not couched in the usual form, in which separately-numbered findings of fact are followed by separately-numbered conclusions of law, all of which lead up to and provide a justification for the result reached by the trial court. The absence of such separately-stated findings of fact and conclusions of law does not, even if erroneous, invariably necessitate a grant of appellate relief. Instead, the critical factor in determining whether an alleged error necessitates a new trial or some other form of relief is the extent to which "this Court is unable to determine the propriety of the order unaided by findings of fact explaining the reasoning of the trial court." *Hill*, 135 N.C. App. at 518, 520 S.E.2d at 800. Assuming *arguendo* that the trial court's order lacks sufficient, separately-numbered findings and conclusions to comply with N.C. Gen. Stat. § 1A-1, Rules 41(b) and 52(a), we do not believe that such an error necessitates an award of appellate relief in this instance for two different, albeit related, reasons.

First, as we have already noted, the trial court found that Plaintiffs "offered evidence that the lake is man-made, by the damming of the two creeks" and that "one of the creeks, Crane[']s Creek, is navigable in its natural condition upstream of the lake." However, the trial court also noted that Plaintiffs offered "no evidence whether [Crane's Creek] was navigable in its natural condition at the site of the lake or downstream." In view of the fact that we are able to discern the factual basis for the trial court's decision from the language of its order, we conclude that the trial court's failure to separately state the basis for its decision in the form of traditional findings and conclusions has not precluded us from ascertaining the extent to which the trial court's decision has adequate evidentiary support and the extent to which the trial court properly applied the law to the facts. Thus, since we are able to adequately evaluate "the propriety of the order," *Hill*, 135 N.C. App. at 518, 520 S.E.2d at 800, we do not believe that an award of appellate relief is necessary

in this case even if the trial court's failure to set out separately enumerated findings of fact and conclusions of law violated N.C. Gen. Stat. § 1A-1, Rules 41(b) and 52(a).

Secondly, despite the fact that a trial judge sitting without a jury serves as the trier of fact and "may weigh the evidence, find the facts against plaintiff and sustain defendant's motion [for involuntary dismissal] at the conclusion of his evidence even though plaintiff has made out a *prima facie* case which would have precluded a directed verdict for defendant in a jury case," *Helms v. Rea*, 282 N.C. 610, 619, 194 S.E.2d 1, 7 (1973), the trial court may have also faced a situation in which Plaintiff was not entitled to relief under any theory given the facts in the record. In such an instance, no remand for proper findings is necessary even if the trial court failed to make proper findings. *Green Tree Financial Servicing Corp. v. Young*, 133 N.C. App. 339, 341, 515 S.E.2d 223, 224 (1999) (stating that "when a court fails to make appropriate findings or conclusions, this Court is not required to remand the matter if the facts are not in dispute and only one inference can be drawn from them"); *Harris v. N.C. Farm Bureau Mut. Ins. Co.*, 91 N.C. App. 147, 150, 370 S.E.2d 700, 702 (1988) (stating that "a remand to the trial court is not necessary if the facts are not in dispute and if only one inference can be drawn from the undisputed facts.") As a result, we conclude that, in the event the evidence presented to the trial court, even when considered in the light most favorable to Plaintiff, is insufficient to sustain a decision in Plaintiff's favor, a failure to make adequate findings of fact and conclusions of law as required by N.C. Gen. Stat. § 1A-1, Rules 41(b) and 52(a), will not be deemed to constitute prejudicial error. For the reasons set forth below, we do not believe that Plaintiffs are entitled to judgment in their favor under any view of the evidence, so that no award of appellate relief is required here for that reason as well.

## Substantive Analysis

[2] On appeal, Plaintiffs contend that the trial court erred by failing to determine that Crane's Creek constitutes a navigable waterway, so that the lake is subject to the public trust doctrine and available for use by the public without charge. According to Plaintiffs, the public trust doctrine is applicable to "those lakes that are created by interrupting the flow of a naturally occurring navigable stream." Petitioners equate North Carolina's "navigable-in-fact" test to a recreational boating test, under which the ability to travel up and down a stream in a kayak would render that stream navigable in law and, therefore, subject to the public trust doctrine. After careful review of

the applicable law and the evidence presented at trial, we conclude that Plaintiffs failed to adequately demonstrate the navigability of Crane's Creek, so that the lake at Woodlake is not subject to the public trust doctrine.

Though "the extent of the public trust ownership of North Carolina is confused and uncertain . . . the Supreme Court of North Carolina has affirmed original state ownership of . . . lands under all waters navigable-in-fact." Thomas J. Schoenbaum, *Public Rights and Coastal Zone Management*, 51 N.C.L.Rev. 1, 17 (1970-71). Under the public trust doctrine, navigable waters are held in trust for the public based on "inherent public rights in these lands and waters." *Gwathmey v. State of North Carolina*, 342 N.C. 287, 293, 464 S.E.2d 674, 677 (1995). The rights of the public in waters subject to the public trust doctrine are established by common law and extend to "the right to navigate, swim, hunt, fish, and enjoy all recreational activities in the watercourses of the State[.]" N.C. Gen. Stat. § 1-45.1.

According to the Supreme Court:

The controlling law of navigability as it relates to the public trust doctrine in North Carolina is as follows: "'If water is navigable for pleasure boating it must be regarded as navigable water, though no craft has ever been put upon it for the purpose of trade or agriculture. The purpose of navigation is not the subject of inquiry, but the fact of the capacity of the water for use in navigation.' " [136 N.C.]· at 608-09, 48 S.E. at 588 (quoting *Attorney General v. Woods*, 108 Mass. 436, 440 (1871)). In other words, if a body of water in its natural condition can be navigated by watercraft, it is navigable in fact and, therefore, navigable in law, even if it has not been used for such purpose. Lands lying beneath such waters that are navigable in law are the subject of the public trust doctrine. . . .

*Gwathmey*, 342 N.C. at 301, 464 S.E.2d at 681. As a result, "the public ha[s] the right to [] unobstructed navigation as a public highway for all purposes of pleasure or profit, of all watercourses, whether tidal or inland, that are *in their natural condition* capable of such use." *Gwathmey*, 342 N.C. at 300, 464 S.E.2d at 682 (quoting *State v. Baum*, 128 N.C. 600, 38 S.E. 900, 901 (1901) (emphasis added)). The public retains the right to travel, by watercraft, on waters which are in their natural condition, capable of such use, without the consent of the riparian owners. *Gwathmey*, 342 N.C. at 300-01, 464 S.E.2d at 682.

## BAUMAN v. WOODLAKE PARTNERS, LLC

[199 N.C. App. 441 (2009)]

*Gwathmey* clearly states that the public has a right to unobstructed navigability of waters in their natural state. Water that is navigable in its natural state flows without diminution or obstruction. *Wilson v. Forbes*, 13 N.C. 30, 35 (1828). As the trial court noted, "plaintiffs contend that[,] if the lake is navigable in fact, that is enough to sustain their position that the defendants cannot impose a use fee." Thus, the principal issue before the trial court was whether Crane's Creek was "navigable in fact."

At most, the competent evidence presented by Plaintiffs demonstrated that one could take a canoe and a kayak one half mile upstream on Crane's Creek from the lake and that Crane's Creek appeared passable in a canoe or kayak at two road crossings several miles upstream from the lake. Thus, when taken in the light most favorable to Plaintiffs, the evidence reflects, as the trial court found, that "Cranes Creek[] is navigable in its natural condition upstream of the lake"[4] and that there was "no evidence whether it was navigable in its natural condition at the site of the lake or downstream."[5] As a result, the issue presented for decision by this Court is whether such evidence would suffice, if believed, to support a finding that the lake is subject to the public trust doctrine.

In attempting to demonstrate that the record evidence sufficed to demonstrate that the lake is subject to the public trust doctrine, Plaintiffs candidly admit that they have not identified any decisions of the Supreme Court or of this Court that address the issue which is before us in this case. For that reason, Plaintiffs place principal reliance on two decisions from other jurisdictions in support of their

4. Actually, Plaintiffs' evidence did not demonstrate that Crane's Creek was navigable by canoe or kayak for its entire length between the lake and the two road crossings described by Bauman. Instead, Plaintiffs' evidence merely tended to show that Crane's Creek could be navigated in such craft for a half mile upstream from the lake and at two other isolated upstream points. Thus, the trial court's finding is actually more favorable to Plaintiffs than the evidence that they adduced at trial.

5. Admittedly, Bauman testified that he had heard that someone else had traveled in a canoe on Crane's Creek downstream from the lake. Aside from the fact that the testimony that Bauman "kn[e]w people that had" "put in below the dam and tried to paddle the creek" likely constituted inadmissible hearsay, N.C. Gen. Stat. § 8C-1, Rule 802, which the trial court is presumed to have disregarded in reaching its decision, *In re Foreclosure of Brown*, 156 N.C. App. 477, 487, 577 S.E.2d 398, 405 (2003) ("When sitting without a jury, the trial court is able to eliminate incompetent testimony, and the presumption arises that it did so."), nothing in this portion of Bauman's testimony indicates that water conditions were normal at the time that these attempts were made or that they were even successful. As a result, there is no error in the trial court's failure to determine that Crane's Creek was navigable in fact below the dam that resulted in the creation of the lake.

contentions. After carefully examining these decisions, we do not believe that they support Plaintiffs' position.

In *State v. Head*, 330 S.C. 79, 498 S.E.2d 389 (1997), the defendant was convicted of violating a statute which prohibited fishing "on the lands of another." The 246 acre site, known as Black's Pond, on which the defendant was charged with illegally fishing was created by damming Black Creek in Lexington County, South Carolina. *Id.* at 84, 498 S.E.2d at 391. The dispositive issue in *Head* was whether Black's Pond was navigable and, thus, subject to the public trust doctrine. *Id.* at 88, 498 S.E.2d at 393. In support of his contention that the water was open to public use, the defendant "produced aerial photographs as well as a map entitled 'Navigable Waters of South Carolina' " which had been produced by the South Carolina Water Resources Commission "reflect[ing] the Commission's determination of navigable waterways through its interpretation of the applicable statutes and regulations," which "list[ed] ·. . . the relevant area of Black Creek as a navigable waterway." *Id.* at 85, 498 S.E.2d at 392. Although a lower tribunal found that the damming of Black Creek rendered it non-navigable, *Id.*, the South Carolina Court of Appeals held that "the existence of occasional natural obstructions to navigation . . . or artificial obstructions to navigation, such as dams, generally does not change the character of an otherwise navigable stream" and reversed the defendant's conviction for violating the relevant statute. *Id.* at 90, 498 S.E.2d at 394 (citation omitted).

In *Diversion Lake Club v. Heath*, the owners of property on the shores of a lake created by the damming of the Medina River filed suit to enjoin the defendants from boating and fishing in the lake waters. 126 Tex. 129, 86 S.W.2d 441 (1935). The defendants, in turn, asserted their rights to use the lake under the public trust doctrine. *Id.* Prior to the damming of the lake, the Medina River had been designated as navigable by Texas statute. *Id.* at 132, 86 S.W.2d at 442. In deciding that the defendants were entitled to access to the lake under the public trust doctrine, the Texas Supreme Court determined that "statutory navigable streams in Texas are public streams," that "their beds and waters are owned by the State in trust for the benefit and best interests of all the people," and that such streams are "subject to use by the public for navigation, fishing and other lawful purposes, as fully and to the same extent that the beds and waters of streams navigable in fact are so owned and so held in trust and subject to such use." *Id.* at 138, 86 S.W.2d at 445.

Although we do not quarrel with the result reached in either of the cases upon which Plaintiffs rely, both are readily distinguishable from the present case. In both *Head* and *Diversion Lake Club*, the streams that fed into Black Pond and Diversion Lake had been declared navigable by public agencies. Plaintiffs have not produced similar evidence in this case. Moreover, we do not believe, and are not holding, that the mere fact that a dam has been placed across a navigable stream, without more, suffices to render that stream non-navigable. Were we to adopt such a rule, many of the major rivers in North Carolina, such as the Catawba and the Yadkin, would become non-navigable, which would be a troubling result. Finally, while *Head* contains language to the effect that the ability to use small boats on a stream renders it navigable in fact, that decision does not provide us with much guidance on the proper disposition of this case, which hinges on whether evidence that a stream can be traversed in small boats in isolated locations renders that stream navigable in fact for purposes of the public trust doctrine. Thus, we do not find either of the out-of-state decisions upon which Plaintiffs place principal reliance to be particularly useful in resolving the issue before us in this case.

After careful consideration of the record evidence, we conclude that Plaintiff's evidence, as reflected in the trial court's findings, does not suffice to support a determination that Crane's Creek is navigable in fact. As we have already noted, Plaintiff's evidence tends to establish merely that Crane's Creek is navigable in canoes and kayaks for about a half mile upstream from the lake and at a couple of upstream road crossings at a greater distance from the lake. Plaintiffs did not present any evidence addressing the navigability of Crane's Creek prior to the formation of the lake. Moreover, the record does not contain evidence that would support a finding that Crane's Creek was or had been navigable downstream from the lake or under the area now covered by the lake under normal conditions. Furthermore, there were significant "holes" in Plaintiffs' evidence relating to the navigability of Crane's Creek. For example, Bauman testified on cross-examination that:

Q Now Cranes Creek comes roughly down west, comes under U.S. 1, and then comes over to Woodlake. Is that correct?

A Correct

Q So you didn't—you didn't attempt to put your kayak or your canoe in Cranes Creek over to the west at U.S. 1?

A No.

Q And did you—did you attempt to put your kayak or your canoe into Cranes Creek below the dam which is roughly at the far eastern end of Woodlake?

A I didn't, no.

. . .

Q Have you done—have you done any examinations of the Cranes Creek territory or the Woodlake territory using U.S. Coast and Geodetic Survey Maps or anything else like that?

A I have seen maps, yes.

Q But you haven't studied those?

A It depends on what you mean by study.

Q Or done—done calculations, that sort of thing?

A No.

Q And did you—did you ever look at any maps or U.S.G.S. surveys that existed before the Woodlake dam was installed?

A I—I—Yes, I have seen some. Yes.

Q And do you have those with you?

A No.

Finally, despite the trial court's findings with respect to the navigability of Crane's Creek upstream from the lake, Bauman provided testimony on cross-examination that raised questions about the extent to which the expedition which he, Jones, and McGee took occurred during a time in which there were normal water conditions.

Q Mr. Bauman, on the videotape that we watched, would it be fair to say that in that area you were paddling, just from observing the video, there was very little current?

A Yes. The current was not an issue with us.

Q In fact, the current in the area you paddled in was negligible, wasn't it?

A The current is negligible? Yes, I'd say.

Q Okay

A  Yes

. . .

Q  So the water impounded by the lake in fact impounds the water—that is, the water backed up all the way to the bridge you put in at is water that's backed up from the dam, isn't it, as opposed to the original creek?

A  I can't say that.

Q  Well, as soon as you go under McLaughlin Bridge there, is it not true that it's very wide right there, far wider than the creek, that immediately widens out?

A  Not a great deal, no. It's about the same size as you come through the bridge there. And it stays pretty much the same size. It might be a little wider as you get to the golf course, yes.

Q  It's not the original creek bank there, is it?

A  I have no idea.

Q  And wouldn't it be fair to say that because there's no current in the area you were paddling and it is wider than—certainly than the creek as you get up into it that most of the area you were paddling is actually impounded backed-up water?

A  I didn't say there wasn't current. I just said there wasn't current that impeded our progress. I'm quite sure that there was probably current there. I've seen current—I've seen current there a number of times.

Thus, the record evidence, even when taken in the light most favorable to Plaintiffs, merely tends to show that Crane's Creek was navigable in small watercraft at various points upstream from the lake.

After a thorough review of the record and the applicable law, we conclude that a stream cannot be said to be navigable in fact for purposes of subjecting a lake created by damming that stream to the public trust doctrine in the absence of evidence tending to show that the stream in question is passable by watercraft over an extended distance both upstream of, under the surface of,[6] and downstream from the lake. If we were to find that Plaintiffs' evidence sufficed to trigger

6. Obviously, the determination of whether a stream was navigable in fact under the surface of a lake should hinge upon its navigability as of the time before the lake existed.

application of the public trust doctrine in this instance, we would effectively be holding that the navigability of a stream should be tested using short segments of the relevant waterway and that the same stream could have short, intermittent, intermingled navigable and non-navigable sections, a result which would introduce considerable confusion and difficulty into the application of the public trust doctrine in North Carolina. We do not believe that such a result is mandated by or consistent with applicable North Carolina law and decline to adopt such an approach.

As a result, for the reasons set forth above, we hold that the trial court correctly concluded that the absence of evidence tending to show that Crane's Creek was "navigable in fact" for a meaningful distance both upstream of, under the surface of, and downstream from the lake precluded a finding that the lake was subject to the public trust doctrine. Furthermore, given that Plaintiffs' evidence was insufficient to permit a valid determination that the lake was subject to the public trust doctrine and that the trial court correctly concluded that Plaintiffs' failure to demonstrate that Crane's Creek was navigable under the surface of and downstream from the lake, any error that the trial court may have committed by failing to make separately-numbered findings and conclusions does not necessitate an award of appellate relief. Thus, the trial court's determination that Plaintiffs had failed to demonstrate that the lake is subject to the public trust doctrine should be affirmed.

## Conclusion

Thus, we conclude that Plaintiffs received a fair trial free from prejudicial error. As a result, the trial court's judgment should be, and hereby is, affirmed.

AFFIRMED.

Chief Judge MARTIN and JUDGE WYNN concur.